Brunke v. State.

---

AUGUST H. BRUNKE V. STATE OF NEBRASKA.

FILED DECEMBER 4, 1920.   No. 21637.

1. Perjury: TAXATION: ASSESSMENT LIST: FALSE OATH. One who swears falsely to a list of property, which is furnished the county assessor, and with the fraudulent purpose of evading taxation, and in violation of the provisions of the statute (Rev. St. 1913, sec. 6340), is guilty of false swearing under the statute, though the oath to such property list is administered by a *de facto* precinct assessor.

2. Criminal Law: EVIDENCE AT FORMER TRIAL: ABSENT WITNESS. Former testimony, taken at a previous trial of the same criminal case, of a witness whose presence at the trial cannot be enforced, by reason of his having located permanently in another state and beyond the jurisdiction of the court, may be given by the official reporter, who testifies to his recollection that his stenographic notes were accurate and correct, when made, even though such reporter can give no present recollection of the testimony without referring to such notes.

3. ———: INDORSEMENT OF NAMES ON INFORMATION. The court may, in its discretion, permit names of additional witnesses to be indorsed upon an information after trial has begun, and where the defendant is not prejudiced thereby.

4. Rulings on the admission of evidence examined and *held* no error.

ERROR to the district court for Johnson county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*L. W. Colby,* for plaintiff in error.

*Clarence A. Davis, Attorney General, C. L. Dort* and *Lewis C. Westwood, contra.*

FLANSBURG, J.

Defendant was convicted and adjudged to pay a fine on a charge of making a false and fraudulent list of personal

property to the assessor, with the purpose of evading taxation, and in violation of the provisions of section 6340, Rev. St. 1913, and brings the case here for review.

He is a farmer, and, there is evidence to show, listed a part only of the corn and oats belonging to him and which were then stored upon his farm. This list was made out in the presence and with the aid of the precinct assessor, and was sworn to by the defendant before such assessor. It appears that the precinct assessor, though he had been duly elected and was acting under color of that authority, had never taken nor subscribed the oath of office, nor given bond, as required by section 6307, Rev. St. 1913.

The defendant attacks the indictment, the sufficiency of the evidence, and the court's instructions to the jury, raising in each instance the objection that, though the precinct assessor may have been duly elected, yet, never having been qualified by taking oath and giving bond, he had no authority to administer the oath to the defendant, and that a prosecution for false swearing is not maintainable where the oath, made the basis of the charge, has been so administered.

The general rule is that, in order to establish the guilt of the accused in such cases, it must appear that the oath complained of was one prescribed by law, was administered by a person having legal authority, and that the person so administering the oath was acting within his jurisdiction.

It cannot be said that the precinct assessor was acting without legal authority. He was an officer *de facto,* and his acts must be upheld as valid, in so far as they affect the interest of the public and of third persons, to the same extent as though he had been an officer *de jure.* As to such official acts, his legal authority cannot be questioned nor attacked collaterally. *Magneau v. City of Fremont,* 30 Neb. 843; *Ex parte Ward,* 173 U. S. 452; 22 R. C. L. 601, sec. 324.

When the defendant listed his property, the transaction was in no way affected by the fact that the assessor

had not taken an official oath, nor given bond. The defendant, by such property listing, was following the regular process of the law towards a determination of a property valuation. So far as the assessor's office or the public was concerned, the property schedule, given in the regular course of legal procedure, was just as effective for the purpose of evading taxation as though furnished and sworn to before an officer *de jure*.

Following an early English decision, a number of the courts in this country have held that an oath administered by an officer *de facto* is insufficient as a basis for a charge of false swearing. 30 Cyc. 1416. But such decisions, it seems to us, lose sight of the fact that the oath administered by such an officer is not a mere nullity, but is, in fact, a legal and binding oath and one founded upon the legal authority which appertains to *de facto* officers to perform official functions.

The better rule seems to be that a person will be held guilty and liable to the same punishment when swearing before a *de facto* officer as when the oath has been administered by an officer *de jure*. Such is the holding in the following cases: *State v. Williams,* 61 Kan. 739; *State v. Thornhill,* 99 Kan. 808; *Campbell v. People,* 55 Colo. 302; *Izer v. State,* 77 Md. 110; *Woodson v. State,* 24 Tex. App. 153; *People v. Cook,* 8 N. Y. 67; *Greene v. People,* 182 Ill. 278.

Defendant predicates error upon rulings of the court in the admission of certain testimony. Evidence was introduced to show that there was, at the time in question, considerably more grain in storage upon the farm than what defendant had described in his property list. It was further shown that defendant made out property schedules for his two sons, who were living with him upon the farm; and these schedules showed no corn nor oats owned by them. Defendant objects to the introduction of these schedules in evidence, on the ground that they were immaterial. This was evidence in the nature of a declaration against interest, bearing directly upon the

question of defendant's ownership of the grain, then in the apparent possession of himself and his two sons, and was evidence upon his alleged intent to list only a part of what he actually owned. In his own behalf, he testified that his two sons owned a portion of this grain, and these exhibits were quite material as tending to refute the defendant's testimony in that respect.

The testimony of R. H. Holmes, taken and reduced to writing at a previous trial of this case, was also introduced. In order to lay a foundation for the introduction of this former testimony, the county attorney testified that Holmes was, at the time of this trial, residing in Colorado and beyond the jurisdiction of the court, and, as corroborative evidence of that fact, introduced a letter, written by this witness, dated a few days prior to time of this trial, postmarked Yuma, Colorado, and in which it was stated that the witness could attend the trial if sent a check to cover expenses and could arrange his affairs. Such testimony, it seems to us, was entirely proper, as tending to show the whereabouts of the witness and that he was beyond the court's jurisdiction.

The name of the court reporter, G. W. Goldsmith, who took the former testimony of Holmes, had not been indorsed upon the information when it was filed. The name of Holmes, however, had been so indorsed, and it was therefore apparent to the defendant from that indorsement that the testimony of Holmes was intended to be used, though he was not advised at that time that the former testimony, taken at the previous hearing, was to be resorted to. After the trial had commenced, the court granted permission to indorse on the information the name of the reporter, Goldsmith. The court acted within reasonable discretion and within the provisions of the statute (Laws 1915, ch. 164), and the defendant was not prejudiced thereby. *Sheppard v. State,* 104 Neb. 709; *Kemplin v. State,* 90 Neb. 655.

The defendant complains further that the court erred in permitting the witness Goldsmith to give the former

Brunke v. State.

testimony of Holmes, just referred to, from his steno-graphic notes, for the reason that, though Mr. Goldsmith testified that he remembered that the notes were accurate when made, he admitted that he had no distinct present recollection of the substance of the former testimony, so that he could give the testimony from his recollection alone, without referring to the transcript. That objection, under the ruling of this court and under the majority rule in other jurisdictions, is untenable. *Hair v. State,* 16 Neb. 601; 22 C. J. 439, sec. 527.

The defendant makes the further objection to the testimony of Mr. Goldsmith that the presence of the witness Holmes could have been procured at the trial, as indicated by his letter. It appears, however, that the county attorney both wrote and telegraphed the witness to come, but that the witness did not comply. There was no means of compelling the witness to come; no process could issue to him. The witness was living in Colorado, and had taken up his abode there, and, so far as the evidence shows, for an indefinite time. The defendant had been confronted by this witness at the former trial, and then had full opportunity to cross-examine, and had exercised that right. To hold that at each successive trial the accused must be again confronted with each witness would, in cases where the witness had gone beyond the jurisdiction of the court, as in this case, frequently result in a defeat of justice. Under the circumstances shown, the former testimony of this witness was admissible. *Hair v. State, supra; Koenigstein v. State,* 103 Neb. 580; 16 C. J. 757, sec. 1557.

AFFIRMED.